ELLIS, Judge.
This is a suit by Paul J. Mella for benefits allegedly due under a disability income policy written by The Mutual Life Insurance Company of New York. From a judgment in favor of plaintiff, Mutual has appealed.
Plaintiff claims that he is totally disabled as the result of a conversion reaction precipitated by an accident which happened on December 28, 1977. At that time, plaintiff pulled a groin muscle while getting out of his car. Plaintiff had had back surgery some years before the accident, but testified that he had had no back trouble thereafter and prior to the accident. Shortly after the accident, plaintiff began having back pain which prevented him from working. On January 12, 1978, he saw Dr. Christopher Cenac, an orthopedist, about the problem. Dr. Cenac treated plaintiff conservatively, then placed him in the Ter-rebonne General Hospital. Plaintiff was admitted there on January 27, 1978, and discharged on March 29, 1978. Neither Dr. Cenac nor Dr. George Cary, who consulted on the case, were able to find any physical explanation for Mr. Mella’s back problem.
Plaintiff was then referred to the Mercy Pain Center in New Orleans, headed by Dr. Richard A. Morse, a psychiatrist. The Pain Center is designed for treatment of those suffering with chronic pain of physical origin complicated by emotional factors. Mr. Mella remained in the Pain Center for five weeks, and participated in their entire multidisciplinary program.
Dr. Morse concluded, at the end of the program, that there was no physical basis for plaintiff’s complaints of pain. He was of the opinion that plaintiff was suffering from a mild case of conversion hysteria, and that his physical symptoms had an emotional basis. It was his opinion that Mr. Mella’s continued rehabilitation could best be furthered by having him return to his job, and become a more active person. He felt that the emotional basis underlying plaintiff’s pain was of long standing, and not connected with the accident in which plaintiff suffered the groin pull.
After his discharge from the pain center, Mr. Mella returned to Dr. Cenac, who certified him as no longer disabled on May 10, 1978. Mr. Mella, however, did not return to work, and continued to see Dr. Cenac from time to time until he was fully discharged in November, 1979.
On July 12, 1978, plaintiff was seen and evaluated by Dr. Thomas Moore, a psychiatrist. Dr. Moore saw plaintiff again in August, 1978, and March, 1979. In late 1979, plaintiff began seeing Dr. Moore on a weekly basis. Dr. Moore testified at the trial that plaintiff’s back problems resulted from conversion reaction which was caused by the accident, and which disabled him completely.
Plaintiff was paid $900.00 in benefits under the policy, but payment was terminated when plaintiff was certified as no longer disabled by Dr. Cenac.
The policy provides a total disability monthly income of $300.00. It also contains the following relevant provision:
“Total Disability: Total disability means a disability which wholly prevents the Insured from engaging in his regular occupation and during which the Insured is under the regular care and attendance of a legally qualified physician other than himself.”
A rider attached to the policy reads as follows:
“1. If the Insured becomes totally disabled due to accident before age 65; and
“2. If the Company, in accordance with the Disability Insurance Provisions on Page 2, has paid a disability income benefit at the basic monthly income rate for the entire period there specified as the maximum applicable for such disability; and
“3. If at the end of such period the Insured is totally disabled, directly *1326 and independently of all other causes, as the result of the same accidental bodily injuries which had caused his total disability due to accident, so that he is wholly prevented from engaging in any occupation for remuneration or profit for which he is, or may be, reasonably fitted by education, training, or experience,
the Company will continue to pay a disability income benefit at the basic monthly income rate during the further continuance of the disability described in paragraph (3) above, provided that:
“(a) such disability requires the Insured to be under the regular care and attendance of a legally qualified physician other than himself; and
“(b) such disability was not caused or contributed to by disease or bodily or mental infirmity (i) which existed before the accident or (ii) which was contracted or developed after the accident other than as the direct and sole consequence of the accidental bodily injuries sustained in such accident; and
“(c) the disability was not the result of an injury self-inflicted while insane.”
The trial court accepted the testimony of Dr. Moore, and found that plaintiff was disabled; that the disability resulted from an accident, and that plaintiff’s disability was permanent. The judge further stated in his reasons for judgment that the chances of plaintiff returning to work were remote, and that the provisions of the policy requiring periodic notices of continuing disability, and being under the regular care of a physician were not enforceable. In this court, defendant complains of the findings of the trial judge in all of the above respects.
Defendant argues that the testimony of Drs. Cenac and Morse, who were treating physicians, is entitled to greater weight than that of Dr. Moore. We note, however, that by the time of trial Dr. Moore was seeing plaintiff on a weekly basis, and was himself a treating physician. The matter is one of weight and credibility to be given to the witnesses, and the opinion of the trial judge in this respect is entitled to great weight. After a careful reading of the record, we can find no manifest error in the conclusion of the trial judge; and cannot say that he is clearly wrong in reaching his conclusions relative to plaintiff’s disability and its causation.
However, we find that plaintiff’s disability is not of such a nature as to relieve him of the responsibility of complying with the provisions of the policy relative to notification of his continuing disability. The policy requires such notice once every six months. Defendant has the right to have plaintiff examined at reasonable intervals, at its expense. Plaintiff is bound by these and other provisions of the policy.
It was stipulated by the parties hereto that defendant paid $900.00 rather than the $600.00 credited on the judgment as rendered, and the judgment will be amended in that respect.
The judgment appealed from is affirmed, insofar as it orders payments of benefits under the policy; the judgment is amended so as to require compliance with the notice of continuing disability and other provisions of the policy relative to future payments; the judgment is further amended so as to give a credit of $900.00 for benefits already paid. Defendant shall pay all costs of the appeal.

AMENDED AND AFFIRMED.